UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
LEE MAYS and JAMES McCLENIC,   MEMORANDUM AND ORDER

              Plaintiffs,   CV 10-3998

      -against-   (Wexler, J.)

TOWN OF HEMPSTEAD, TOWN OF
HEMPSTEAD DEPARTMENT OF
SANITATION,

             Defendants.
----------------------------------------------------X

APPEARANCES:

    LAW OFFICES OF FREDERICK K. BREWINGTON
    BY: FREDERICK K. BREWINGTON, ESQ.
    Attorney for Plaintiffs
    556 Peninsula Boulevard
    Hempstead, New York 11550

    RYAN, BRENNAN & DONELLY
    BY: JOHN M. DONELLY, ESQ.
    Attorney for Defendants
    131 Tulip Avenue
    Floral Park, New York 11001

WEXLER, District Judge

    Plaintiffs ("Mays" and "McClenic" or "Plaintiffs") are employees of the Town of Hempstead and bring this action claiming violations of 42 U.S.C. §§ 1981 and 1983. The defendants Town of Hempstead and Town of Hempstead Department of Sanitation ("Town" and "Dept. of Sanitation" or "Defendants") move for summary judgment alleging that the record does not substantiate Plaintiffs' claims. Plaintiffs oppose the motion. For the reasons stated below, Defendants' motion for summary judgment is granted.
1

## BACKGROUND

Plaintiffs Lee Mays and James McClenic are employed by the Town of Hempstead in the Highway Department, and have been since March 1997, and for at least the past five years, respectively. Mays Deposition ("Mays Dep."), at 17-18; McClenic Deposition ("McClenic Dep."), at 16-17. The gravamen of Plaintiffs' complaint involves a black-faced doll that was found hanging from a noose off the back of forklift in the welding shop of Roosevelt Yard facility of the Highway Department, in an area where workers had to pass through in order to punch in and out and receive work assignments. Relying upon the Plaintiffs' complaint, the deposition testimony submitted, and the parties' Rule 56.1 statements, the court finds that the relevant facts concerning the discovery of and the events surrounding the noose are as follows:

Plaintiff McClenic's daily shift was from 7 am to 3 pm. Sometime following his lunch break on October 16, 2007, McClenic was told by a co-worker, Charles Finley, that a green doll with a black face[1] was hanging from a noose off the back of a forklift. McClenic Dep., at 26-27. McClenic could not bring himself to go look at the noose, and after he left the Roosevelt Yard (the "Yard"), he called Darren Bryant, his previous foreman and current friend, still currently employed as a foreman for the Highway Department, on Bryant's his cell phone, to tell him about the noose, and asking him to check it out. McClenic Dep., at 28, 31-32. Mr. Bryant testified his shift had already ended for the day and he was at home when he received McClenic's call. Bryant Dep., at 23-24; Plaintiffs' 56.1 Counter-Statement ("Pl. 56.1 Ctr-Stmt."), at 14. Bryant told McClenic he was not at work, and he "wasn't going out of his way to look for them," Bryant

---

[1] According to a news photo that were submitted in connection with the motion, that the doll was a stuffed animal with a blackened face and body. Brewington Declaration ("Brewington Dec."), Exhibit G.

Dep., at 31, but would check it out. McClenic testified that he did not report the noose to anyone else at the Town of Hempstead, including his current supervisor. McClenic Dep., at 35. Nor did Bryant contact his supervisor, Paul Collins, after the call with McClenic. Bryant Dep., at 32.

The next morning, when he got to work and punched in, Bryant saw the nooses[2] hanging from the forklift. About twenty minutes to an hour later, Bryant called the Deputy Commissioner for the Highway Department, Darryl Lopez, to report the noose, who in turn said he would call the Commissioner. Bryant Dep., at 36-37. The Commissioner of the Highway Department, Thomas Toscano ("Toscano"), testified that he was made aware of the noose when he received a phone call from the Communications Department in the morning of October 17, 2007 informing him that there was a media inquiry on it. Toscano Dep., at 102. Plaintiffs admit that Toscano arranged to have the noose removed and secured in his office upon learning of its existence. Pl. 56.1 Ctr-Stmt., at 7; Toscano Dep., at 77-78. McClenic testified that Bryant sent him a photo of the noose on his cell phone that morning, but McClenic never saw the noose in person, and admits it was removed as of the morning of October 17, 2007. McClenic Dep., at 29, 30, 37. There is no dispute that the media were present at the Roosevelt Yard that day, and the event was reported in Newsday, as well on News 12, and Channels 2 and 12. See Declaration of Frederick K. Brewington, Exhibits F & G; Supplemental Affirmation of John M. Donnelly, Ex. 1. In addition, the Nassau County Police Department, including the Bias Unit, came to the Yard and initiated an investigation that day.

---

[2]Bryant testified that he saw two nooses - one with the doll and one without, both hanging from the forklift side by side. The allegations of Plaintiffs' complaint involve only one noose – that with the doll hanging from it – and the Plaintiffs continually testified about one noose. Therefore, the Court will treat the claim as involving the one noose with the black-faced doll hanging from it.

3

Plaintiff Mays testified that he first saw or heard of the noose hanging off the forklift when he went to punch in the morning on October 17, 2007, at approximately 7 am. Mays Dep., at 26-27. Within 15 or 20 minutes, he called Town of Hempstead Councilwoman Dorothy Goosby's office, but he only spoke with whoever answered the phone, and reported that a doll with a noose around its neck was hanging from the back of a forklift. Mays Dep., at 29-30. Sometime later, Councilwoman Goosby, as well as news reporters, and the Town of Hempstead Supervisor, Kate Murray, appeared at the Yard. Mays Dep., at 30-31. Mays spoke to some of the reporters, and recalled that the police investigated the day he saw the noose. Mays Dep., at 30, Pl. 56.1 Ctr-Stmt., at 3; Donnelly Supp. App., Ex. 1; Brewington Dec., Ex. F. Mays did not report the noose to anyone else at the Town of Hempstead. Mays Dep., at 33, Pl. 56.1 Ctr-Stmt., at 3.

Toscano questioned employees of the welding shop about what happened, Toscano Dep., 106-110, and provides the only account in the record of the genesis of the noose and black-faced doll. He testified he was told that the stuffed animal, which was a Teletubby, had been around the Highway Department and was a mascot of sorts for the former Commissioner of Highways, Tony Califano. A welder in the shop, Louie Perchelli, always burned his clothes. Perchelli was having issues with other workers, and the Teletubby was found in the garbage somewhere, and was hung up, with burn marks, to make fun of him. Toscano Dep., at 78.

Toscano said that Human Resources sent someone to investigate the incident the morning of October 17. Toscano Dep., at 109. The Deputy Town Attorney for the Town of Hempstead affirmed that a Special Investigator was dispatched to the Yard upon discovery of the noose. The First Squad of the Nassau County Police Department and the Bias Crime Unit also

4

responded, and an investigation was commenced that day. Affidavit of Susan Jacobs, ¶ 6. It was never determined who hung the noose, and the Town is not aware that any arrests were made. Id, at ¶ 7.

Both McClenic and Mays admit that prior to this incident, they had never seen a noose on the Highway Department work site, and nether has ever made previous complaints of discrimination. Pl. 56.1 Ctr-Stmt., at 2, 4; Mays Dep., at 74; McClenic Dep., at 74. Both also admit that they never observed any racially offensive items anywhere at the Roosevelt Yard. Mays Dep., at 25; Pl. 56.1 Ctr-Stmt., at 4. Yet McClenic testified that prior to the noose, he heard racial slurs around the Yard, and felt that Caucasion employees got preferential treatment in getting their trucks repaired, but did not specify the names or dates of these occurrences. McClenic Dep., at 74-77. He also testified that since October 2007, he has seen another Town employee and supervisor, Eddie Hartman, wear a Confederate flag on his headband and in his car and truck. McClenic Dep., at 41.

Mays testified that he experienced racial tension in the Yard prior to the noose incident, reporting his belief that there was disparate treatment between how he was treated versus white employees for various employee infractions, such as missing supplies, sleeping on the job, and an accident with a truck. Mays Dep., 67-69, 71-72 and 82-90. Mays acknowledged that he never complained of discrimination, saying "Have I complained to them? What good is that going to do; no, no." Mays Dep., at 35. Defendants challenge this by pointing to news accounts of the incident in which Mays reported that race relations amongst the 40 employees were normal and everyone got along. See Brewington Dec., Ex. G, Newsday article of October 18, 2007; Donelly Supplemental Affirmation, Ex. 1, Channel 2 News report.

Two days following the noose incident, the Commissioner Toscano issued a Memorandum to "All Highway Department Employees" prohibiting Town employees from displaying offensive materials. Pl. 56.1 Ctr-Stmt, at 8. The Deputy Town Attorney affirms that a Policy on Diversity was circulated in 2000 to all Town employees, yet Toscano testified that he did not know if there was such a Town policy at the time of the incident. There is no dispute that the Town conducted training on the appropriate workplace behavior that discussed the Town's anti-discrimination and anti-harassment policy in 2008, and both Plaintiffs participated in that training. See Brewington Dec., Ex. I.

In their complaint, Plaintiffs' also allege that Defendants Town of Hempstead and Town of Hempstead Department of Sanitation engaged in a policy, custom and condoned practice of discrimination in violation of 42 U.S.C. § 1983, and names five (5) individuals victimized by the discrimination. In opposition to this motion, Plaintiffs offer copies of ten (10) complaints filed with the New York State Division of Human Rights, from 2000 to 2009, against the Town and various departments thereof, alleging various acts of discrimination due to race, national origin or disability, and/or sexual harassment; and two civil complaints filed in the Eastern District of New York against the Town, filed in 2004 and 2005, asserting claims of employment discrimination. Brewington Decl., Exhibit K. No other evidence in support of these allegations is provided. The court now turns to the merits of the motion.

## DISCUSSION

1. Standards for Summary Judgment

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the

6

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the non-moving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co.,

751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). "Even in a discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)(citations omitted).

2.   Disposition of the Present Motion

Plaintiffs' complaint contains two causes of action against both Defendants. The first alleges that Defendants Town of Hempstead and Town of Hempstead Department of Sanitation violated 42 U.S.C. § 1981 by creating a hostile work environment. The second cause of action alleges that the Defendants violated 42 U.S.C. § 1983 by engaging in a course of conduct that constituted a custom, policy and practice of unlawful discrimination.

The court first addresses an initial issue of the proper Defendants in this case. In addition to the Town, the Plaintiffs bring these claims against the Dept. of Sanitation. There is no evidence in the record indicating why the Dept. of Sanitation is a Defendant. As noted above, despite the fact that the complaint alleges that both Plaintiffs were employees in the Dept. of Sanitation, both Plaintiffs testified and admitted in their Rule 56.1 Statement that they are currently employed in, and at the time of this incident were employed in, the Highway Department. The noose was found in the Roosevelt Yard, which is a Highways Department work site. The discovery of the noose was reported to Highway Department personnel, and removed by the Commissioner of the Highways Department. Since there is no factual basis to keep them in this action, summary judgment as to the Dept. of Sanitation is granted in its

entirety.[3]

     a.       42 U.S.C. § 1981 Claim for Hostile Work Environment

42 U.S.C. § 1981 provides that all persons shall have the right to "make and enforce contracts" with the "full and equal benefit of all laws," and provides a cause of action for race-based discrimination based on a hostile work environment. Whidbee v. Garzarelli Food Specialities, Inc., 223 F.3d 62, 69 (2d Cir. 2000). The standard for showing a hostile work environment is essentially the same whether under 42 U.S.C. §§ 1981 and 1983 and Title VII. Whidbee v. Garzarelli Food Specialities, Inc., 223 F.3d 62, 69 (2d Cir. 2000); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

To establish a hostile work environment claim, a plaintiff must demonstrate "'(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environments, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997), quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996).

To establish that a hostile work environment exists, the plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult'... that is sufficiently severe to alter the conditions of the victim's employment.'" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); Smith v. Town of Hempstead Department of Sanitation Sanitary District No. 2, 798 F.

---

[3]In their motion papers, Defendants question why the Dept. of Sanitation is named as a defendant in this action, and the Plaintiffs did not respond or otherwise provide any explanation.

Supp.2d 443, 451. "'Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.'" Schwapp v. Town of Avon, 118 F.3d at 110, quoting Harris v. Forklift Systems, Inc., 510 U.S. at 23. "For racist comments, slurs and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity,'... meaning that 'instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.'" Schwapp, at 110, quoting Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986), other citations omitted.

In the present case, Plaintiffs' claims essentially rest on the singular hanging of the noose with the black-faced doll. Plaintiffs have presented very little concrete evidence of discrimination beyond the hanging of the noose. Except for non-specified allegations of McClenic and Mays regarding racial slurs or disparate treatment by unidentified people at unspecified times as noted above, no affidavits or other admissible evidence is provided to substantiate these allegations. Neither Plaintiff has ever filed a complaint against these Defendants.

To establish other incidents of discrimination by Defendants in support of their hostile work environment claim, Plaintiffs submit various complaints filed with the New York Division of Human Rights by other individuals against the Town of Hempstead and various departments thereof, and two federal complaints. Yet, the Plaintiffs have not provided any evidence to support the allegations of these filings, and as mere allegations, they have no evidentiary weight. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); Smith v. Town of Hempstead, 798 F.Supp.2d 443, 452 (E.D.N.Y. 2011) (EEOC complaints and a federal lawsuit, without more evidence in support, have no evidentiary weight). As the Second Circuit has noted, "even in the

"discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (affidavits must be based on "concrete particulars" and not "bald assertions and legal conclusions" to satisfy Rule 56(e)).

The critical question in this case is whether the singular hanging of the noose and black-faced doll is sufficient to create a hostile work environment. It cannot be argued that "'the noose is amongst the most repugnant of all racial symbols,'" Smith, 798 F.Supp.2d at 452. quoting Williams v. New York City Hosing Authority, 154 F.Supp.2d 820, 824 (S.D.N.Y. 2001). Yet, incidents that are "'few in number' and that occur 'over a short period of time'" may fail to demonstrate a hostile work environment. Whidbee, 223 F.3d 62, 69 (2d Cir., 2000), quoting Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987) and Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)(single incident is not enough unless it is extraordinarily severe); but see Ferris v. Delta Air Lines, Inc., 277 F.3d 128 (2d Cir. 2001) (single incident of rape is severe enough to create a hostile work environment).

Other courts in this Circuit have examined whether the presence of a noose in the workplace is sufficiently severe to create a hostile work environment. See MacMillan v. Millennium Broadway Hotel, 2011 WL 4357523, *4 (S.D.N.Y. 2011)(display of voodoo doll with black face and pink lips hanging from a noose for seven days, even after complaints were made, constitutes hostile work environment and defeats motion for summary judgment); Smith v. Town of Hempstead Department of Sanitation Sanitary District No. 2, 798 F.Supp.2d 443 (E.D.N.Y. 2011)(singular hanging of a noose in a racially charged atmosphere and poorly

handled by supervisors survives a summary judgment motion); Brown v. Orange & Rockland Utilities, Inc., 594 F. Supp.2d 382 (S.D.N.Y. 2009)(two nooses hung on two occasions and directed at plaintiff constituted a hostile work environment); Faulkner v. Niagara Mohawk Power Corp., 2006 WL 3207815, *6 (N.D.N.Y. 2006)(noose in work room and allegations that dead animals placed nearby and work conditions disturbed do not create hostile work environment); Wilson v. NYC Department of Transportation, 2005 WL 2385866 (S.D.N.Y. 2005) (plaintiff's claims that a noose was placed in his locker, followed by a letter containing a picture of a noose months later, and called a racially offensive names on numerous occasions, defeated summary judgment on his hostile work environment claim); Lewis v. Snow, 2003 WL 22077457 (S.D.N.Y. 2003) (summary judgment granted in discrimination case based on, amongst other things, an African-American statuette hanging from a noose); McCoy v. City of New York, 131 F.Supp.2d 363, 374 (E.D.N.Y. 2001) (no hostile work environment created by, amongst other things, a display of a noose and racially offensive advertisement of an African-American man).[4]

The court acknowledges that another court in this district has found that a singular hanging of a noose was sufficient to survive a motion for summary judgment. In that case, plaintiffs and others found a noose hanging in a Town of Hempstead Sanitation Department garage upon arriving at work at 6 am. One of the plaintiffs removed the noose in frustration, and took it to a manager, and soon thereafter, another superior called a meeting of all the workers

---

[4]The court finds that Defendants' contention that Plaintiff McClenic has suffered no injury because he did not personally view the noose to be irrelevant. See Scwapp, 118 F.3d 106, 111 (2d Cir. 1997) (that plaintiff was not present for racial comment does not render that comment to his hostile work environment claim).

telling them that while such displays "might have been acceptable or funny 10 years ago," it was no longer acceptable. There was at least some additional evidence of a racially charged atmosphere, and it was not clear what, if any, investigation took place, until plaintiff wrote a complaint letter two weeks later, which prompted a two-month long investigation. Judge Spatt found that there were sufficient issues of fact as to whether there was a hostile work environment and denied summary judgment. See Smith v. Town of Hempstead Department of Sanitation Sanitary District No 2., 798 F.Supp.2d 443, 453 (E.D.N.Y. 2011).[5]

The court finds that the facts in the present case do not create a hostile work environment. McClenic testified that he was told of the noose sometime after lunch on October 16, 2007. When he made his one and only one report of it, to his former boss, Charles Bryant, Mr. Bryant was already home for the day and told McClenic he was not going to do anything about it until he returned to work the next day. When Mays discovered the noose upon arriving at work the morning of October 17, he reported the noose by calling Town Councilwoman Dorothy Goosby's office. There is no dispute that neither Plaintiff reported the noose to their boss or current supervisor. A media inquiry that same morning prompted notice to the Commissioner of the Highway Department, Toscano, and Plaintiffs acknowledge that Toscano removed the doll and noose upon discovery and secured them in his office. The Town's Human Resources department dispatched an investigator to the Yard that day, and the Nassau County Police Department also conducted an investigation. No arrests were made. Following the incident, on October 19, the Highway Department circulated a memorandum to all employees regarding the display of

---

[5]The court notes that the Smith case is not of the federal lawsuits submitted in connection with this motion.

offensive material. Several months later, the Town conducted training for all of its employees regarding the Town's prohibition against discrimination, sexual and other harassment, which both Plaintiffs attended.

While the court notes the offensive nature of the noose and the black-faced doll, it was removed by superiors upon discovery, was investigated, and prompted a reminder to all employees not to display offensive materials. It was never determined who hung the noose. Neither Plaintiff had ever seen a noose on the Highway Department before, and had never previously made a complaint of discrimination. As a result, the court finds that the facts of this action, even viewed in the light most favorable to Plaintiffs, fail to create a genuine issue of material fact as to whether there was a hostile work environment to support a claim under 42 U.S.C. § 1981. Defendants' motion for summary judgment on this claim is granted.

    b.    <u>42 U.S.C. § 1983 Claim of a Policy, Custom or Practice of Discrimination</u>

Tile 42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

"A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1359 (2011), quoting <u>Monell v. Dept. of Soc. Servs. Of City of New York</u>, 426 U.S. 658, 691 (1978). A municipal entity cannot be held vicariously liable under § 1983 for the acts of its employees, and are only liable for "'their own illegal acts.'" <u>Connick</u>, at 1359 (citations omitted). A plaintiff seeking

14

such liability "must prove that 'action pursuant to official municipal policy' caused their injury," which includes decisions of lawmakers and acts of officials, and "practices so persistent and widespread as to practically have the force of law.'" Id. (citations omitted).

Plaintiffs claim that the Defendant Town failed to properly investigate the noose incident, failed to properly train and supervise its higher level employees regarding anti-discrimination policies and practices, and exhibited a pattern and practice of racial discrimination against its employees prior to and after the noose incident. In support, Plaintiffs name five individuals in the complaint and submitted, in most cases partial, copies of ten complaints filed with the Division of Human Rights and two in federal district court alleging race, gender and disability discrimination by the Town of Hempstead and/or various department therein, dating from March 2000 through January 2009. See Brewington Dec., Ex. K and M. No affidavits or other further evidence in support of the merits of these complaints is provided.[6]

Plaintiffs argue that The Town failed to properly investigate the circumstances surrounding the noose, and that Darren Bryant's failure to investigate the noose immediately upon speaking with McClenic should be imputed to Defendants. Yet, liability under § 1983 requires that a constitutional violation has occurred, and the facts here do not create such a finding. Plaintiffs could conceivably argue that the failure to investigate was done with discriminatory intent, or disparately in violation of equal protection rights, see Walker v. City of New York, 2010 WL 5186779, *5 (E.D.N.Y. 2010), or is so pervasive that it equates to a policy or custom of tolerating discrimination. Yet Plaintiff has not provided any evidence to support

---

[6]One claim includes partial copies of an Order After Stipulation of Settlement and the Stipulation of Settlement, and another includes the respondents' submission and a letter from the Equal Employment Opportunity Commission finding no liability. See Brewington Dec., Ex. K.

15

these theories.

It is undisputed that Toscano removed the noose the morning he was made aware of it. Human Resources initiated an investigation that day, and the Nassau Policy Bias Unit also conducted an investigation that day. A memorandum reinforcing the Town's anti-discrimination policy was distributed soon thereafter. Plaintiffs' argument is that Bryant, a foreman "off the clock" at the time that McClenic reached him, did not return to work and address the noose immediately, but waited until he arrived at work the next morning. Plaintiffs also challenge Toscano's investigation.

Even viewing the facts in a light most favorable to the Plaintiffs, there is no evidence in the record that any constitutional violation occurred as required to impose liability, or that a policy or custom of discrimination exists because of a failure to investigate. See Patterson v. County of Oneida, New York, 375 F.3d 206, 228 (2d Cir. 2004) (no facts provided to show policy or custom based on failure to investigate). The cases cited by Plaintiffs involve inquires of whether the defendant employer properly investigated ongoing allegations of sexual harassment to impute liability under Title VII – not municipal liability under § 1983 – and therefore are not instructive.

Plaintiffs also claim that the Defendant Town failed to properly train its supervisors and/or employees on discrimination. There is no dispute that the Town conducted anti-discrimination and diversity training in 2008, and in support of this motion, Defendant Town submitted an affidavit from Susan P. Jacobs, the Deputy Town Attorney, attaching a copy of the Town's Policy on Diversity, which was distributed in January 2000, and the Town's Policy Against Discrimination and Harassment, which was distributed in connection with the training

that occurred in 2008. Plaintiffs argue that Toscano, the Commissioner of the Highway Department, was unfamiliar with the Town's anti-harassment policy. Toscano testified that if faced with a complaint of discrimination, he did not know the "actual mechanism," but he would go to would go to the Human Resources department. He also stated that he did not know what the Town policy was at the time of the noose incident, but that he did not tolerate any workplace violence of employment discrimination, and that he would expect his supervisors to tell him what they saw or heard. Toscano Dep., at 50-53. Plaintiffs argue this shows a failure to train for which the Town should be liable under § 1983.

The court finds that the evidence put forth by Plaintiff does not amount to a valid claim under § 1983 for failure to train. No other evidence or example of an alleged failure to train is presented, and no further details or examples are provided of other constitutional violations that occurred as a result of a failure to train. The U.S. Supreme Court recently addressed the question of whether a single undisputed Brady violation could substantiate municipal liability under § 1983 for failure to train prosecutors. The Court stated that "[a] municpality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S.Ct. at 1359, citing Oklahoma City v. Tuttle, 471 U.S. 808 (1985). The failure to train "must amount to 'deliberate indifference as to the rights of persons with whom the [untrained employees] come into contact. Only then 'can such a shortcoming be properly though of as a city 'policy or custom' that is actionable under § 1983." Id., at 1359-1360 (citations omitted). The Court continued to say that "deliberate indifference' is a stringent standard requiring proof that a 'municipal actor disregarded a known or obvious consequence,' such as being on 'notice that a particular omission on the training program causes'" a violation of constitutional rights. Thus, "a

17

pattern of similar constitutional violations is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id., (citations omitted.) The Supreme Court found that the single Brady violation did not support the jury's finding of liability under § 1983 for failure to train. Id., at 1366. See also Simms v. City of New York, 2012 WL 1701356, *3, fn 4 (2d Cir. 2012) (to assert a § 1983 claim for failure to train, plaintiff must at least allege facts indicating a pattern of constitutional violations by untrained employees).

In the present case, Plaintiffs' evidence does not come close to the standard required to show the deliberate indifference to a pattern of constitutional violations required to substantiate a claim for failure to train under §1983. Plaintiffs rely solely on their conclusion that Toscano was poorly trained, with no further evidence of how others were trained or that there was "deliberate indifference" to whether constitutional rights were being violated.

Plaintiffs also claim that Defendant Town has engaged in a pattern and practice of discrimination, citing the names and complaints of other instances of alleged discrimination by the Town. They also argue that the pattern and discrimination is further revealed in the fact that both Plaintiffs reported the noose to other African-Americans, and not a white person, and McClenic's testimony that it would do "no good" to complain to Defendants.

Again, there is no substance upon which to form these conclusion. Plaintiffs fail to provide any facts or any admissible evidence, and without more, these allegations do not provide evidence of a pattern or practice. "Reference to other actions establishes that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights..., not that those violations actually occurred." Simms v. City of New York, 2012 WL 1701356, *2 (2d Cir. 2012). Assertions that are "wholly conclusory" are insufficient, and "without evidentiary

18

pattern of similar constitutional violations is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id., (citations omitted.) The Supreme Court found that the single Brady violation did not support the jury's finding of liability under § 1983 for failure to train. Id., at 1366. See also Simms v. City of New York, 2012 WL 1701356, *3, fn 4 (2d Cir. 2012) (to assert a § 1983 claim for failure to train, plaintiff must at least allege facts indicating a pattern of constitutional violations by untrained employees).

In the present case, Plaintiffs' evidence does not come close to the standard required to show the deliberate indifference to a pattern of constitutional violations required to substantiate a claim for failure to train under §1983. Plaintiffs rely solely on their conclusion that Toscano was poorly trained, with no further evidence of how others were trained or that there was "deliberate indifference" to whether constitutional rights were being violated.

Plaintiffs also claim that Defendant Town has engaged in a pattern and practice of discrimination, citing the names and complaints of other instances of alleged discrimination by the Town. They argue that the pattern and discrimination is further revealed in the fact that both Plaintiffs reported the noose to other African-Americans, and not a white person, and McClenic's testimony that it would do "no good" to complain to Defendants.

Again, there is no substance upon which to form these conclusions. Plaintiffs fail to provide any facts or admissible evidence, and without more, these allegations do not provide evidence of a pattern or practice. "Reference to other actions establishes that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights..., not that those violations actually occurred." Simms v. City of New York, 2012 WL 1701356, *2 (2d Cir. 2012). Assertions that are "wholly conclusory" are insufficient, and "without evidentiary

support of allegations of particularized incidents, do[] not state a valid claim." Kern, 93 F.3d at 44, quoting Butler v. Castro, 896 F,2d 698, 700 (2d Cir. 1990). See also Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); Schwapp v. Town of Avon, 118 F.3d 106, 110, 111 (2d Cir. 1997).

Viewing the record in a light most favorable to the Plaintiffs, there are no genuine issues of material fact as to whether Defendants violated 42 U.S.C. §§ 1981 and 1983. See Patterson v. County of Oneida, New York, 375 F.3d 206, 227-228 (2d Cir. 2004) (plaintiff's claim of a policy or custom of discrimination fails where there is no evidence of specific facts of harassment, failure to investigate or failure to train). Therefore, Defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court is directed to close the file in this matter.

SO ORDERED

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
November 16, 2012